587 P.2d 770

The STATE of Arizona, Appellee,

v.

Lance Franklin LYNCH, Appellant.

No. 2 CA–CR 1438.

Court of Appeals of Arizona,
Division 2.

Sept. 20, 1978.
Rehearing Denied Nov. 1, 1978.
Review Denied Nov. 21, 1978.

John A. LaSota, Jr., Atty. Gen. by Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

John M. Neis, Pima County Public Defender by Allen G. Minker, Asst. Public Defender, Tucson, for appellant.

## OPINION

RICHMOND, Chief Judge.

The question of appellant's guilt of unlawful possession of marijuana was submitted to the trial court on police reports and the evidence adduced at a suppression hearing. He was found guilty and placed on probation for a period of one year. On appeal, he presents a two-pronged attack on the denial of his motion to suppress: (1) no valid consent had been given to look inside his car, and (2) he was unlawfully detained when questioned as to the whereabouts of his driver's license. We uphold the trial court's ruling on the motion and affirm.

Two witnesses testified at the suppression hearing—Department of Public Safety officer Hodges and appellant. The evidence most favorable to support the trial court's ruling is as follows. Hodges, while driving on the westbound side of highway I–10 toward Marana at about 7:30 p. m., observed appellant's car headed east on I–10 at a high rate of speed. The officer made a U-turn through the median and started to pursue the speeding vehicle. Eastbound traffic was heavy and Hodges observed the speeding car switching lanes, tailgating other cars and cutting off vehicles. When he caught up to appellant's vehicle, Hodges stayed a car-length behind and paced it for half a mile at 80 m. p. h. He then turned on his lights and siren and pulled appellant's car over to the side of the freeway.

Hodges walked up to the vehicle and asked appellant, the driver, to step to the rear of the car. Appellant complied and Hodges said he was placing him under arrest for reckless driving. During his three years' experience on I–10, Hodges had arrested about 20 persons for reckless driving and had taken at least 75 per cent of them into custody. Whether he issued a citation and released a person or took him into custody depended upon various factors, including the rate of speed, the traffic conditions, and whether the driver was endangering other people.

Hodges informed appellant of his *Miranda* rights. Appellant told him that he understood and would answer the officer's questions. Hodges then conducted a pat-down search, handcuffed appellant and placed him in the police vehicle, and asked him if he had a driver's license. Appellant said his driver's license was in the glove compartment. The officer returned to appellant's car, reached in the window and opened the glove compartment. He pulled out a bunch of papers and went through them to see if there was a driver's license. Finding none, he returned to the patrol car and asked appellant "where was his driver's license because I told him they weren't in the glove compartment." Appellant then said his license was in the pocket of his shirt, which was behind the driver's seat on the floor. Hodges returned to the vehicle on the driver's side, opened the door, pulled back the front seat and reached in to get appellant's shirt. He found the driver's license in the shirt pocket.

When Hodges reached in to get the shirt, he detected an odor of raw marijuana. He picked up an orange bag "sitting next to the shirt", opened it and found some marijuana, hashish, and a couple of pipes. He then returned to the patrol car and told appellant that "he had an additional charge

of possession of marijuana." Appellant nodded and Hodges asked him if there was any more marijuana in the car. Appellant said there was in a brown paper bag in the back window, and also in the trunk. Hodges removed the marijuana before the vehicle was driven to DPS headquarters, where Hodges made an inventory search later that evening. He testified that had he not found the marijuana, he would have inventoried the contents of the vehicle before removing it from the highway.

In denying the motion to suppress, the trial court expressly found "[t]hat the defendant voluntarily by clear and convincing evidence gave the officer the right to enter his automobile for the purpose of getting his driver's license and that in so entering the automobile the officer, at the time of the second entry, smelled marijuana and that gave rise, under the circumstances, to probable cause and exigent circumstances permitting the search of the automobile for that marijuana.

■ A consent search is outside the ambit of traditional Fourth Amendment warrant requirements, *State v. Dugan*, 113 Ariz. 354, 555 P.2d 108 (1976), but clear and positive evidence in unequivocal words or conduct expressing consent must be shown. *State v. Kananen*, 97 Ariz. 233, 399 P.2d 426 (1965). In *People v. Smith*, 210 Cal.App.2d 252, 26 Cal.Rptr. 620 (1962), the police officer noted the absence of the registration slip in the defendant's car. The defendant was standing outside the car. The officer inquired, "Where is the registration?" and the defendant said, "It should be in the glove compartment." The California court, in upholding the search of the glove compartment, stated:

"The officer could reasonably interpret this statement as indicating that it was all right for him to look into the glove compartment for the registration. The officer did look into the compartment without any objection on the part of defendant and found a large envelope containing the payroll checks here in question. Whether the consent was given by defendant to investigate the contents of the glove compartment was primarily one of fact for the trial court to determine.

[Citations omitted.] And failure to object is evidence of consent. [Citations omitted.] Implicit in the court's ruling is the determination of the issue of consent in favor of the People. Thus the evidence in the glove compartment was not obtained as the result of an illegal search or seizure. The fact that defendant was then in custody does not make his consent to the officer's examining the contents of the glove compartment involuntary *per se*. [Citations omitted.] The fact defendant was in handcuffs does not negate his consent. [Citations omitted.]" 26 Cal.Rptr. at 622–623.

*See also People v. Gibbs*, 16 Cal.App.3d 758, 94 Cal.Rptr. 458 (1971).

■ We believe the rationale of the California cases applies here. It is true that Hodges did not ask appellant's permission to search for his license. He could, however, interpret appellant's statement that it was in the glove compartment as assent to his looking there. Appellant made no offer to get the license himself and failed to object to the officer's doing so. Even if this alone were insufficient to indicate consent to a search of the glove compartment, appellant's subsequent conduct established consent to the search for his shirt in the rear of the vehicle. He told the officer the license was in his shirt pocket and where the shirt was located, knew from the search of the glove compartment that the officer would look in the shirt pocket, and failed to object when the officer proceeded to do so. Waiver may be shown by conduct as well as words expressing consent. *State v. Tucker*, 118 Ariz. 76, 574 P.2d 1295 (1978). The totality of circumstances supports the trial court's conclusion that appellant consented to a limited search.

■ When Hodges was lawfully inside the vehicle, he smelled the odor of marijuana. This provided sufficient probable cause to make a further search. *State v. Harrison*, 111 Ariz. 508, 533 P.2d 1143 (1975). For constitutional purposes, an immediate search of the vehicle without a warrant was reasonable under the Fourth Amendment, given probable cause to search. *State v. Walker*, 119 Ariz. 121, 579 P.2d 1091 (1978). Alternatively, an inventory search before

removal of the vehicle would have been appropriate. *State v. Walker*, supra.

Appellant's second argument is that he was unlawfully detained at the time he was asked about his driver's license. His claim is predicated on the fact that the police officer, instead of issuing a citation and releasing him, elected to take him into custody. By enacting A.R.S. § 13–1422, however, the legislature has lodged discretion in the arresting officer to either take a person arrested for a traffic offense to jail or before a magistrate, or to release him upon his written promise to appear. *State ex rel. Purcell v. Superior Court*, 107 Ariz. 224, 485 P.2d 549 (1971). Appellant contends that since no standards are articulated for the arresting officer to follow, there is a constitutional infirmity in A.R.S. § 13–1422. We disagree. His reliance on cases concerning delegation of unlimited discretionary authority over the exercise of First Amendment freedoms is misplaced. The discretion delegated by § 13–1422 is limited by the prerequisite of a lawful arrest.

Affirmed.

HOWARD and HATHAWAY, JJ., concur.