953 P.2d 926

**STATE of Arizona, ex rel., Roderick G. McDOUGALL, Phoenix City Attorney, Petitioners,**

v.

**SUPERIOR COURT OF the State of Arizona, In and For the COUNTY OF MARICOPA, and the Phoenix Municipal Court, the Honorable Susan R. Bolton, and Oscar Sutton, judges thereof, Respondent Judges,**

**Michael Daniel SEIDEL, Real Party in Interest.**

No. 1 CA–SA 97–0040.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 30, 1997.

As Amended Dec. 9, 1997.

Review Denied April 21, 1998.

---

Roderick G. McDougall, Phoenix City Attorney by Michael E. Ziton, Assistant City Prosecutor, Phoenix, for Petitioner.

H.L. Dobbs, Phoenix, for Real Party in Interest.

## OPINION

GRANT, Presiding Judge.

This is a special action filed by the State from decisions by the city court ("trial court") and the superior court finding no probable cause to arrest Respondent/Real Party in Interest, Michael Daniel Seidel for DUI. This court accepted jurisdiction of the special action with an opinion to follow. This is that opinion.

### FACTS AND PROCEDURAL HISTORY

On September 30, 1995, at approximately 3:10 a.m., Phoenix Police Officers Bill Hardy and Philip Lanoue were leaving the parking lot of Central City Precinct located at 620 West Washington. A white pickup truck pulled in front of the officers' vehicle, blocking their exit. Officer Lanoue observed a young female, Jeanette Martinez ("Martinez"), driving the vehicle with Respondent/Real Party in Interest, Michael Daniel Seidel ("Defendant"), in the passenger seat. Martinez exited the driver's side of the pickup truck, ran up to Officer Lanoue in the patrol car and said, "Help, this man needs help, he's been drinking." At the same time, Defendant exited the truck and staggered toward the patrol car. Defendant then snatched the keys to the truck from Martinez's hand.

While Officer Hardy took Defendant aside to obtain his personal information, Officer Lanoue asked Martinez what had occurred. Martinez told the officer she was a passenger in the back seat of a vehicle traveling northbound on Seventh Avenue when she realized suddenly, as she looked out the back window, that Defendant's vehicle was traveling too close to the vehicle in which she was riding. Martinez also observed that Defendant, who was the only occupant of his vehicle, was driving erratically; at one point he drove onto a curb, almost hitting a bus stop. As both vehicles approached a red light at Seventh Avenue and Washington, the vehicle in which Martinez was riding moved into the other lane to avoid being rear-ended by De-

fendant. While stopped at the traffic light, Martinez noticed Defendant's head was bobbing back and forth as though he were having difficulty staying awake.

Martinez then left the vehicle in which she was riding and walked over to Defendant's vehicle and asked Defendant if he was "okay." Defendant said he was fine, but he admitted he was unable to drive. Martinez offered to drive for Defendant. She then got into Defendant's vehicle and drove him to the Central City Precinct where she met with the officers. Officer Lanoue observed Defendant staggering about the parking lot and also smelled alcohol on Defendant's breath. Defendant became loud and wanted to get inside his truck and leave. The officers restrained Defendant with handcuffs. The officers admitted they never saw Defendant driving or in actual physical control of his vehicle.

Defendant was charged with: Driving or Being in Actual Physical Control of a Motor Vehicle While Under the Influence of Intoxicating Liquor, in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 28–692(A)(1) (1994); Having a B.A.C. of .10 or Higher Within Two Hours of Driving, in violation of A.R.S. section 28–692(A)(2) (1994); and Failure to Drive in One Lane, in violation of A.R.S. section 28–729(1) (1989).

Prior to trial, Defendant filed a Motion to Suppress Evidence alleging lack of probable cause to arrest. Following a hearing, the trial court granted Defendant's motion, finding no probable cause to arrest when Defendant was taken into custody. The State moved to dismiss its case to preserve its right of appeal. The trial court granted the motion. The State timely filed a Notice of Appeal on May 24, 1996. In a minute entry dated January 8, 1997, the Respondent Judge upheld the trial court's finding of insufficient probable cause to arrest. The State then filed this special action. Because this is an issue capable of being determined, likely to arise again, and without an adequate remedy of appeal by the State, we accepted jurisdiction of this special action. Rules of Procedure for Special Actions, Rule 1. We hold that on appeal in such a case, the superior court should apply a *de novo* standard of review when reviewing a city court ruling.

## ISSUES

I. Is a *de novo* review the proper standard on appeal to determine whether the facts in this case constituted sufficient probable cause to arrest?

II. Did the superior court err in declining to apply a *de novo* standard of review in this case?

III. Did both the superior court and the trial court err in failing to find probable cause as a matter of law based on the facts available to the arresting officer?

IV. Is an officer independently required to investigate allegations from a citizen-informant who personally witnesses criminal conduct before the officer may use the information to establish probable cause for arrest?

## I. & II. Did the Superior Court Err in Declining to Apply a *De Novo* Standard of Review in This Case?

In its minute entry dated January 10, 1997, the superior court stated it had jurisdiction and heard oral argument. Finding no error, that court affirmed the trial court. The superior court then recited the facts presented at the suppression hearing, including: (1) one officer testified he personally had no probable cause to arrest; and (2) the other officer testified he based probable cause to arrest on the information given him by a citizen, Martinez, who drove Defendant to the police station, and also on his own observations. The trial court found no probable cause to arrest.

The superior court minute entry stated:

The applicable standard of review of a motion to suppress is the abuse of discretion standard. *State v. Prince*, 160 Ariz. 268, 272, 772 P.2d 1121, 1125 (1989). This Court declines to apply the *de novo* standard as urged by the State. However, given the facts of this case the outcome would be the same under any standard. This Court finds that the issues presented are not mixed questions of fact and law requiring this Court to substitute its judg-

ment for the trial court's. Application of the *de novo* standard requires an appellate court to substitute its judgment in instances where "the facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory or constitutional issue." *State v. Winegar*, 147 Ariz. 440, 445, 711 P.2d 579, 584 (1985). This is not such a case.

The superior court then stated the only conclusion to be deduced from the facts presented was that Defendant had been drinking that evening. It agreed with the trial court that the evidence did not support the conclusion that Defendant had driven his vehicle while intoxicated. The superior court concluded the officers did not have reasonable, trustworthy, and sufficient information, facts, or circumstances to lead a reasonable person to believe an offense had been committed. Therefore, the superior court reasoned, the officer lacked probable cause to believe the person arrested committed that offense. As a result, the superior court affirmed the trial court.

The State relies on *State v. Blackmore*, 186 Ariz. 630, 925 P.2d 1347 (1996), for the principle that a *de novo* review is the proper standard to determine whether an arrest is illegal. The State claims it has no other forum for review and, if this court does not grant relief, it will suffer irreparable harm because it cannot pursue its prosecution of Defendant. Therefore, the State claims the superior court erred in not applying a *de novo* standard of review:

> Whether an illegal arrest occurred is a mixed question of fact and law. We give great deference to the trial court's factual determination, but we review the ultimate question *de novo*.

186 Ariz. at 632, 925 P.2d at 1349 (citations omitted).

*State v. Blackmore* was not cited or relied on by either the trial court or the superior court. *Blackmore* is a case in which the supreme court granted review on three issues—none dealing with the appropriate standard for reviewing probable cause to arrest. 186 Ariz. at 632, 925 P.2d at 1349. However, the opinion contains a paragraph highlighted—"**Standard of Review**"—con-

taining the quote set forth above. *Id.* The issues in *Blackmore* were: (1) Did the seizure of defendant before his formal arrest exceed the bounds of an investigatory stop? (2) Did the officer violate defendant's right to be free from an unreasonable search and seizure by drawing a gun, handcuffing defendant and placing him in a patrol car? (3) Assuming seizure of the defendant amounted to an illegal arrest, did it taint defendant's consent to search his fanny pack for identification? In contrast, the present case involves no such issues. Furthermore, *Blackmore* involved issues of the officer's own safety and protection, while the safety of law-enforcement officers is not an issue in this case.

In *Blackmore*, our supreme court was merely reiterating a long-standing principle that *de novo* review is the proper standard to determine whether an arrest is illegal. *See State v. Winegar*, 147 Ariz. 440, 445, 711 P.2d 579, 584 (1985); *State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983); *State v. Garcia*, 162 Ariz. 471, 473, 784 P.2d 297, 299 (App.1989). Therefore, we conduct a *de novo* review here.

Similarly, the superior court should have applied a *de novo* standard of review although it specifically stated that it did not. However, the superior court also stated the result would have been the same under any standard of review. The superior court did not correctly review the case. A reviewing court may substitute its judgment for that of an agency or a lower court regarding the legal effect of factual findings. *Carondelet Health Servs. v. Arizona Health Care Cost Containment Sys. Admin.*, 187 Ariz. 467, 469, 930 P.2d 544, 546 (App.1996).

This court has recently held:

> On appeal, the superior court and the court of appeals determine whether substantial evidence supports the administrative decision. *Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App.1990). The reviewing court, however, conducts a *de novo* review of the administrative agency's application and interpretation of the law. *Eshelman v. Blubaum*,

114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App.1977). The reviewing court therefore may substitute its judgment for the agency's conclusions regarding the legal effects of its factual findings. *Gardiner v. Arizona Dept.* [sic] *of Economic Security*, 127 Ariz. 603, 606, 623 P.2d 33, 36 (App.1980). *Arizona Health Care Cost Containment Sys. Admin. v. Carondelet Health Sys.*, 188 Ariz. 266, 269, 935 P.2d 844, 847 (App.1996). Similarly, the United States Supreme Court has essentially adopted the *de novo* standard for issues of illegal arrest. *Ornelas v. United States*, 517 U.S. 690, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). For the reasons stated, we hold the superior court, in reviewing a decision of the trial court, should have considered the law as applied to the facts *de novo*. Had the superior court applied a *de novo* standard of review on this record, it would necessarily have found probable cause to arrest. *State v. Valenzuela*, 182 Ariz. 632, 898 P.2d 1010 (App.1995). Based on the facts known to the officers, they had probable cause to arrest Defendant for Driving Under the Influence in violation of A.R.S. section 28–692(A) (1989). *See Nebraska v. Ege*, 227 Neb. 824, 420 N.W.2d 305 (1988) (holding that probable cause for an arrest for DUI may be acquired from a citizen); *see Pharo v. Tucson City Ct.*, 167 Ariz. 571, 810 P.2d 569 (App.1990).

### III. Did Both the Superior Court and the Trial Court Err in Failing to Find Probable Cause as a Matter of Law Based Upon the Facts Available to the Arresting Officer?

This issue is already answered in the immediately preceding sentence.

### IV. Is an Officer Required to Investigate Allegations from a Citizen–Informant Who Personally Witnesses Criminal Conduct Before the Officer May Use the Information to Establish Probable Cause for Arrest?

We discuss issues III and IV jointly; although issue III has been answered, these two issues are intertwined and duplicative.

■ Both police officers admitted they never saw Defendant driving while intoxicated or breaking any law. They based their conclusion that he had done so solely on the statements of Martinez, who arrived at the police station with Defendant in the passenger seat of the vehicle. Both officers then determined that Defendant was intoxicated while driving. Although one officer believed he did not have probable cause to arrest, the officers did place Defendant under arrest based on the facts related to them by Martinez. The officer had probable cause to arrest even though he thought he did not. *State v. Turner*, 142 Ariz. 138, 688 P.2d 1030 (1984).

Formerly, an officer could not effectuate an arrest for a misdemeanor without personally observing its occurrence. That rule has now been changed by a statute allowing arrests for misdemeanors based on probable cause. A.R.S. § 13–3883(A)(4) (1989). The facts here were disputed because, although Defendant admitted he was intoxicated, he denied driving. Notwithstanding Defendant's denial, the officers had probable cause to arrest Defendant based on their personal observations of Defendant in an obviously intoxicated condition, and Martinez's statements about observing Defendant while he was driving. The trial court made no finding that the civilian witness was unreliable or incredible. Thus, from our *de novo* review of the established facts, the evidence—the information from Martinez, plus the officers' observation of Defendant's condition and his grabbing the keys—clearly established probable cause.

## CONCLUSION

For the reasons stated, we remand this case to the superior court with directions to reverse its affirmation of the Motion to Suppress and direct the city court to proceed with a trial on the merits.

TOCI and RYAN, JJ., concur.